## HOFFMEYER v. THE STATE.

[No. 5,951.   Filed March 27, 1906.]

1. CRIMINAL LAW.—*Statutes.*—*Factory Act.*—*Reporting Accidents.*—*Interurban Railroads.*—*To Whom Statute Applies.*— Section eight of the factory act (Acts 1899, p. 231, §7087h Burns 1901), providing that any person having charge of a manufacturing establishment shall, within forty-eight hours after the happening of any accident therein, report same to the state factory inspector, applies to the superintendent of a street railroad company's repair shop where its cars are repaired and other work done for the use of such company by persons "employed for hire," although nothing is made for sale therein. p. 527.

2. STATUTES.—*Construction.*—*Factory Act.*—In construing sections one and eighteen of the factory act (Acts 1899, p. 231, §§7087a, 7087r Burns 1901), the court will look at the general purpose of the statute and the grievances which it was designed to prevent.   p. 531.

3. SAME.—*Criminal.*—*Strict Construction.*—While statutes for the punishment of crimes are strictly construed, still, they should be construed to carry out the evident purposes for which they were enacted.   p. 532.

From Criminal Court of Marion County (34,843); *Fremont Alford,* Judge.

Prosecution by the State of Indiana against Fred Hoffmeyer. From a judgment of conviction, defendant appeals. *Affirmed.*

*F. Winter, W. H. Latta, G. W. Payne* and *L. H. Ober-reich,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild, W. C. Geake* and *A. R. Hutchinson,* for the State.

COMSTOCK, J.—The affidavit upon which the prosecution was founded was filed by David F. Spees, chief deputy state inspector of the department of inspection of the State of Indiana, before William C. Smock, a justice of the peace in Center township, Marion county, of said State. It is alleged that Fred Hoffmeyer was superintendent of and in charge of a workshop for the repair and manufacture of articles, and that Henry Courtat was foreman of said shop; that the shop was owned and controlled by the Indianapolis Traction & Terminal Company, a corporation controlling and conducting a street railway in the city of Indianapolis, Marion county, Indiana; that on or about April 24 an accident happened in said shop to M. L. Weaver, and that said Fred Hoffmeyer and Henry Courtat failed to report the accident, in writing, within forty-eight hours of its happening, to the chief inspector of the State of Indiana. The defendants moved to quash the affidavit, which motion was overruled. The motion to quash the affidavit as to Henry Courtat was sustained. The case was tried before Justice of the Peace Smock, and the defendant was found guilty and fined $1 and costs. An appeal was taken from said judgment to the Marion Criminal Court, and there the case was submitted to the court without a jury, upon an agreed statement of facts, the defendant Fred Hoffmeyer pleading not guilty. Upon the facts submitted the court found the defendant guilty as charged and fixed his fine at $5.

Appellant contends that the Indianapolis Traction & Terminal Company is not engaged in manufacturing, and for that reason the judgment should be reversed.

1. This question is presented by the assignment of errors and discussed by counsel. The affidavit is

based upon section eight of an act concerning labor, etc. Acts 1899, p. 231, §7087h Burns 1901. The facts agreed upon are substantially as follows: The defendant Fred Hoffmeyer was, on April 24, 1905, a superintendent of a certain repair and workshop in the city of Indianapolis, Marion county, Indiana. On said day there was an accident in said shop whereby injury was done to one of the employes therein, named Monroe L. Weaver. Said Hoffmeyer did not within forty-eight hours of the time of the accident, or since, report the same to the chief factory inspector of the State of Indiana. Said shop is the property of, and was owned and operated by, the Indianapolis Traction & Terminal Company, a corporation organized under the laws of the State of Indiana, for the incorporation of street railway companies, in pursuance of the terms and provisions of the act for the incorporation of street railways as set forth in §5450 Burns 1901, Acts 1901, p. 119. Said Indianapolis Traction & Terminal Company is not organized under any part or any of the provisions of the manufacturing and mining act, or the voluntary associations act. Neither said Indianapolis Traction & Terminal Company, any employe thereof, nor any person working in or about said repair and workshop in which said accident happened, is engaged in the manufacture of any article whatever, unless the following is manufacturing within the terms of the statutes. Said company in said repair and workshop, whenever the floors in any cars become broken, does take flooring and cut the same, on circular saws, to fit, and put the same in place on the floors of said cars. When any of the signs on any cars are broken said company does, from lumber bought for and delivered to said shop, repair and replace the same. Said signs are repaired by taking boards and cutting out the letters with saws in said shop, then fitting celluloid and iron castings, purchased for the purpose, on the same, whereby the signs are held in place on the cars. They are then painted.

Whenever a window sash or car door is broken or needs repairs the same is fixed by putting in a new piece of lumber for that purpose and using as much of the old door or sash as is practicable. Signs for baseball, parks and band concerts are prepared in said shops as follows: Rough boards are cut in lengths of about two feet and nailed together, planed, painted, fitted on iron castings, bought for the purpose, and set temporarily in cast-iron sockets on the cars. Some others are prepared by pasting printed notices on rough boards, which are fitted in said iron castings.

There are in said shops planing machines, shapers or fizzers, circular saws, band saws, rip saws, cut off saws, gig saws, jointers, lathes, mortise machines, stickers and all kinds of hand tools, said saws and machines being run by electric motor power. No article therein, or upon which any work is done therein, is sold or offered for sale, or prepared for sale, or to be offered for sale, either directly or indirectly. No mining, quarrying, laundry work, renovating, baking or printing is done in said shop or any part thereof, or on any floor of any part thereof. Said shop and every part thereof, and every tool and machine of any kind contained therein are used, and every person employed in or about the same is engaged, solely and exclusively in the repair of such other cars or other property or articles belonging to said Indianapolis Traction & Terminal Company, and are in use in such company's business of transporting passengers for hire, for the purpose of keeping said cars or other appliances in condition to carry on said business.

By section one of the act of 1899, *supra* (§7087a Burns 1901), the act is made to apply to "any manufacturing or mercantile establishment, laundry, renovating works, bakery or printing-office." By section eighteen (§7087r Burns 1901) the language in the act is interpreted to have the following meaning: "The words 'manufacturing or

mercantile establishment, mine, quarry, laundry, renovating works, bakery or printing-office' means any mill, factory, workshop, store, place of trade or other establishment where goods, wares or merchandise are manufactured or offered for sale, or any mine or quarry where coal and stone are mined and quarried for the market, and persons are employed for hire." It will be observed that. the words "mine and quarry" occur both before and after the expression "or merchandise are manufactured or offered for sale;" that the words "laundry and renovating works" precede "or other establishments," etc. It is manifest that the qualifying words just quoted do not apply to "laundry or renovating works;" in such places wares or merchandise are not manufactured or offered for sale. The word "workshop" is defined as "a shop where any manufacture or handiwork is carried on." Webster's Dict. Whether for the purpose of repair or manufacture, that is "to modify. or change natural substances so that they become articles of value and use" (Anderson's Law Dict., p. 654), is not material. The words of said eighteenth section may be properly read as written: "Manufacturing or mercantile establishment, * * * bakery, or printing office." The word "and" preceding "persons are employed for hire" at the conclusion of said section is properly connected with and qualify all the places designated preceding it. The words "where goods, wares or merchandise," etc., apply to and qualify only' such other places as are not otherwise therein described. We then have the statute before us, applying to a workshop where persons are employed for hire. Under this construction the mechanic working in his own shop or the farmer doing his own work or repairing, instances cited by appellant, would not come within the statute.

*Baltimore, etc., R. Co.* v. *Cavanaugh* (1905), 35 Ind. App. 32, is not applicable to this case. It is obvious from

the scope of the statute that it was the intention of the legislature by many provisions of the act to reduce the hazard of certain employment in which machinery is used. *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944. It limits the hours of labor for minors of both sexes; forbids the employment of children under fourteen years of age; makes it the duty of the employer to furnish contrivances for the safety of the employes, and in said section eight requires that a report be made to the state inspector of labor of all accidents or injuries to any persons on said premises, within forty-eight hours of the time of the accident. We can not admit that the legislature intended to be less mindful of the employer of hired labor in a shop where repair work only is done than when the same laborer is employed in an establishment engaged in manufacturing articles from the raw material, when in both places the same conditions exist as to machinery and the hazards encountered. It is apparent from the whole act that the purpose of the legislature was to enact 2. a statute designed to protect the life and health of the laborer working for hire in places where dangerous machinery is used. Every legislative act must have a reasonable construction. Potter's Dwarris, Statutes, 145. The intent of the legislature is to be collected from the general view of the whole act. Potter's Dwarris, Statutes, 193. "In considering acts of parliament, judges are to look at the language of the whole act, and if they find in any particular clause an expression, not so large and extensive in its import as those used in other parts of the act, and upon a view of the whole act, they can collect from the more large and extensive expressions used in other parts, the real intention of the legislature, it is their duty to give effect to the larger expressions." Potter's Dwarris, Statutes, 194.

The rule of strict construction applies to criminal statutes. This rule "however, whenever invoked, comes

attended with qualifications and other rules no less important; and it is by the light which each con-

3. tributes that the meaning must be determined. Among them is the rule that the sense of the words is to be adopted which best harmonizes with the context, and promotes to the fullest manner the policy and object of the legislature. The paramount object, in construing penal as well as other statutes, is to ascertain the legislative intent; and the rule of strict construction is not violated by permitting the words to have their full meaning, or the more extensive of two meanings, when best effectuating the intention." Maxwell, Interp. of Stat. (2d ed.), 333.

The facts show that the principal work of the shop was in the way of repair for the purpose of keeping the cars and other appliances of the traction company in condition to carry on its business; that to an inconsiderable extent some articles were manufactured, but the shop in question is within the statute, being a workshop as defined by Webster, *supra*, and the judgment is therefore affirmed.