ANGOLA RAILWAY AND POWER COMPANY *v.* BUTZ,
ADMINISTRATRIX.

[No. 7,618.    Filed June 6, 1912.    Rehearing denied December 18,
1912.    Transfer denied February 13, 1913.]

1. MASTER AND SERVANT.—*Injury to Servant.—Failure to Comply
with Factory Act.—Complaint.—Sufficiency.*—A complaint, in an
action for the death of a servant who was caught in an un-
guarded belt, alleging that defendant furnished electricity to
various customers, and that, as a part of the machinery in its
plant, it had boilers, dynamos and engines, sufficiently shows
that defendant was engaged in the generation of electricity, so
as to be within the provisions of §8029 Burns 1908, Acts 1899 p.
231, for the guarding of certain dangerous machinery.    p. 423.

2. WORDS AND PHRASES.—*"Dynamo."*—A dynamo is a machine for
generating or converting mechanical energy into electricity.
p. 424.

3. EVIDENCE.—*Judicial Notice.—Matters of Common Knowledge.—
Matters of Science.*—Courts take judicial notice of such matters
of common knowledge and science as are known to all men of
ordinary understanding and intelligence, and they judicially
know that a dynamo is used for generating electricity and not
merely for the purpose of transmitting or storing the same.
p. 424.

4. ELECTRICITY.—*Generation of Electricity.—"Manufacturing Es-
tablishment".—Factory Act.*—A plant for the generation of elec-
tricity is a manufacturing establishment, as contemplated by the
provisions of the factory act, §§8021, 8029 Burns 1908, Acts 1899
p. 231, §§1, 9.    p. 424.

5. MASTER AND SERVANT.—*Injury to Servant.—Violation of Statu-
tory Duty.—Negligence.—Complaint.—Sufficiency.*—A complaint
for the death of an employe, alleging that the death was caused
by the employer's omission, in violation of statute, to guard a
dangerous belt, sufficiently charges negligence without averring
such failure to be a negligent failure, since the failure to dis-
charge a duty imposed by statute is negligence *per se.*    p. 425.

6. MASTER AND SERVANT.—*Injury to Servant.—Violation of Statu-
tory Duty.—Assumption of Risks.*—The doctrine of assumed risk
has no application when the death or injury of an employe is
caused by the employer's failure to safeguard machinery as re-
quired by statute.    p. 425.

7. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Alle-
gations.—"Duty".*—In an action for the death of a stationary
engineer, whose arm was caught by an unguarded belt, the allega-

Angola R., etc., Co. *v.* Butz—52 Ind. App. 420.

tion of the complaint, that it was a part of decedent's duty to adjust such belt, is not the statement of a conclusion, but is the allegation of an ultimate fact.  p. 426.

8. APPEAL.—*Review.—Verdict.—Answers to Interrogatories.—Conclusions.—Ruling on Motion for Judgment.*—The objection that some of the findings included in the answers to interrogatories are statements of conclusions, and not facts, does not affect the question presented by the motion for judgment on such answers, where the general verdict includes a finding of facts covering practically the same proposition.  p. 428.

9. MASTER AND SERVANT.—*Injury to Servant.—Contributory Negligence.*—Contributory negligence is not necessarily established against an employe by showing that he continued to use defective machinery after he knew it was out of repair.  p. 429.

10. MASTER AND SERVANT.—*Injury to Servant.—Contributory Negligence.—Jury Question.*—In an action for the death of a stationary engineer, whose arm was caught by an unguarded belt while he was attempting to adjust the idler, where it was shown that he was attempting to do the work by the means provided and in the usual way, but that the place where he was attempting to adjust the idler was more dangerous than other places where he could have done the same work, the question of his contributory negligence was for the jury.  p. 429.

11. MASTER AND SERVANT.—*Injury to Servant.—Verdict.—Answers to Interrogatories.*—In an action for the death of a servant, whose arm was caught by an unguarded belt while he was attempting to adjust the idler, the general verdict for plaintiff is not overcome by answers to interrogatories showing that he was attempting to do the work with the means provided, and in the usual way, but that the place where he was attempting to adjust such idler was more dangerous than other places where he could have done the same work.  p. 430.

12. TRIAL.—*Instructions.—Incorporating Complaint.*—The incorporation of the whole complaint in an instruction to the jury, while not to be commended, is not ground for reversal.  p. 430.

13. TRIAL. — *Instructions. — Incomplete General Instruction.*—A general instruction when incomplete, but correct as far as it goes, may be completed by other instructions.  p. 430.

14. APPEAL. — *Review. — Harmless Error.—Instructions.*—A judgment will not be reversed for error in an instruction, where, by answers to interrogatories, it is shown that appellant was not harmed.  p. 431.

15. APPEAL. — *Review. — Instructions. — Refusal.*—The refusal of tendered instructions is not error, where the law applicable to the issues was correctly and fully stated in the instructions given.  p. 431.

16. APPEAL.—*Review.*—*Harmless Error.*—*Admission of Evidence.*
—Error, if any, in the admission of evidence which was not of
a character to harm appellant, will not work a reversal. p. 431.

From Steuben Circuit Court; *E. A. Bratton,* Judge.

Action by Della Butz, administratrix of the estate of
William H. Butz, deceased, against the Angola Railway and
Power Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Elmer E. Stevenson* and *Leonard, Rose & Zollars,* for
appellant.

*Brown & Carlin* and *Powers & Yeagley* for appellee.

FELT, J.—This was an action by appellee, as administratrix of the estate of William H. Butz, deceased, against
appellant, to recover damages for personal injuries resulting in the death of said Butz. The cause was tried by a
jury which returned a verdict in favor of appellee in the
sum of $4,000, together with answers to interrogatories.
Appellant's motions for judgment on the answers to the
interrogatories and for a new trial were overruled and this
appeal taken.

The first error relied on for reversal is that the trial
court erred in overruling appellant's demurrers to the complaint. The complaint is in one paragraph, and, after showing appellee's right to maintain the action, charges that
appellant "is a corporation duly organized under the laws
of the State of Indiana, and is the owner and operator of
a plant for the furnishing of electric light and water to the
city of Angola; * * * that the machinery in said plant
consists of boilers for the generation of steam, two engines,
dynamos, pumps, shafts, belting, etc.; that a shaft runs
through the building in which said plant is located, which
shaft is used in transmitting power and motion to the machinery in said plant." The complaint then shows the construction of a certain pulley in said plant and the usual
method of adjusting the same by means of certain screws,

and then alleges "that on the 9th of January, 1909, the deceased, William H. Butz, was and for fourteen years prior thereto had been engineer in said plant and it was a part of his duty as such engineer to adjust said belt by raising or lowering said pulley according as it was desired to loosen or tighten the same; that on said day while attempting to adjust said belt by turning down said screws and thereby tightening said belt and while standing on the west side of said belt and in close proximity thereto, as he was compelled to do in order to reach said screws, and while engaged in the discharge of his duties as such engineer and without any fault or negligence on his part and in consequence of the negligence of said defendant in not guarding said belt and machinery, the arm of said William H. Butz was caught by said belt and carried under said pulley and his body was thereby drawn between said post and said pulley or wheel and so jammed, bruised and crushed that he was instantly killed; that at the time the deceased was killed as aforesaid he was in the employment of the defendant as engineer in said plant and had been continuously in such employment for five years or more; that said belt at the time said deceased was killed, as aforesaid, was and for a long time immediately prior thereto had been wholly unguarded; that said belt, at the time of said killing, and during all of the time it remained unguarded as aforesaid was very dangerous; that said belt could have been guarded without rendering the same useless for the purpose for which it was used and intended, to wit: the transmission of power and motion from said engine to said shaft, and without in any way interfering with the efficiency of said belt or of said machinery."

Counsel for appellant first contend that the complaint is insufficient for the reason that it does not show that at the time of the injury to appellee's decedent, appel-

1. lant was engaged in the generation or manufacture of anything, and for the further reason that appel-

lant's plant is not of such a character as to come within the statute requiring machinery to be guarded.

The complaint does not directly state that appellant was engaged in the generation of electricity, but that it "furnished" electricity to various customers, and that as a part of the machinery in said plant it had boilers, dynamos and two engines. A dynamo has been defined to be a

2. machine for generating or converting mechanical energy into electricity. *Thomson-Houston Electric Co.* v. *Western Electric Co.* (1895), 65 Fed. 615; Standard Dict. (20th Century ed.) 567; Webster's New International Dict. 689; 3 Century Dict. and Cyc. 1867; 8 Ency. Britannica (11th ed.) 764. Courts will take judicial notice

3. of such matters of common knowledge and science as are known to all men of ordinary understanding and intelligence. *Eureka Vinegar Co.* v. *Gazette Printing Co.* (1888), 35 Fed. 570; *Brown* v. *Piper* (1875), 91 U. S. 37, 42, 23 L. Ed. 200.

In the case of *City of Crawfordsville* v. *Braden* (1892), 130 Ind. 149, 158, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. 214, it is stated that courts will not take judicial notice of the various methods of generating and transmitting electricity, but this statement is not inconsistent with the proposition that courts may know judicially that a dynamo is used for generating electricity and not merely for transmitting or storing the same. From the averments of the complaint, the reasonable and necessary inference to be drawn is that at the time of the alleged injury appellant owned and operated the plant, where decedent was employed, for the purpose of generating electricity as well as furnishing the same to its patrons. *Indianapolis St. R. Co.* v. *Ray* (1906), 167 Ind. 236, 241, 78 N. E. 978.

The authorities are not in harmony as to whether a plant for the generation of electricity is a manufacturing

4. establishment, but the better reason and the spirit of our statute require that it be so classified. §§8021,

8029 Burns 1908, Acts 1899 p. 231, §§1, 9; *Hoffmeyer* v. *State* (1906), 37 Ind. App. 526, 531, 77 N. E. 372; *Burke* v. *Mead* (1902), 159 Ind. 252, 260, 64 N. E. 880; *Wells* v. *Christian* (1906), 165 Ind. 662, 76 N. E. 518; *People, ex rel.,* v. *Wemple* (1892), 129 N. Y. 543, 29 N. E. 808, 14 L. R. A. 708; *People, ex rel.,* v. *Campbell* (1895), 88 Hun 527, 34 N. Y. Supp. 711; *Bates Mach. Co.* v. *Trenton, etc., R. Co.* (1904), 70 N. J. L. 684, 58 Atl. 935, 103 Am. St. 811; *Beggs* v. *Edison Electric, etc., Co.* (1891), 96 Ala. 295, 11 South. 381, 38 Am. St. 94; *Lamborn* v. *Bell* (1893), 18 Colo. 346, 32 Pac. 989, 20 L. R. A. 241.

Appellant next urges that the complaint is insufficient for the reason that it does not charge that appellant negligently failed to guard the belt. The complaint alleges appellant's omission, in violation of statute, to guard a dangerous belt. This was a sufficient charge of negligence, since a failure by the owner of a manufacturing establishment to discharge a duty specifically imposed on him by statute is negligence *per se. Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 420, 73 N. E. 899; *Monteilh* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 152, 64 N. E. 610, 58 L. R. A. 944; *Indiana Mfg. Co.* v. *Wells* (1903), 31 Ind. App. 460, 462, 68 N. E. 319; *Buehner Chair Co.* v. *Feulner* (1902), 28 Ind. App. 479, 483, 63 N. E. 239.

The doctrine of assumed risk, contended for by appellant, has no application when the death, or injury, of an employe is caused by a failure on the part of his employer to safeguard machinery, as required by statute. *Jenney Electric Mfg. Co.* v. *Flannery* (1913), 53 Ind. App. ——, 98 N. E. 424; *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644, 648, 70 N. E. 828; *Chamberlain* v. *Waymire* (1904), 32 Ind. App. 442, 447, 68 N. E. 306, 70 N. E. 81.

Appellant also contends that the allegation that "it was a part of his [decedent's] duty as such engineer to adjust said belt" is a conclusion, and that the complaint is there-

fore insufficient for failure to show that decedent's
7.  employment required him to come in close contact
with the unguarded belt.

"There are instances where the word 'duty' may be used
in a pleading to designate the character of work to be done,
or act to be performed, in pursuance of an employment,
and when so used the allegation is one of ultimate fact,
and not subject to the criticism that it states only a con-
clusion of the pleader.  There is, however, a clear distinc-
tion between such use of the word 'duty' and its use in a
general statement charging that it is the duty of a person
to do, or to refrain from doing, a certain act or thing, in-
tending thereby to charge that by reason of contractual
relations, or by implication of law, such person is obligated
to do or not to do the particular thing averred.  In the
latter case the weight of authority is decidedly to the effect
that such averments state conclusions of law and not facts.
But the use of the word 'duty' in the case at bar clearly
comes within the former class, and is employed in the sense
of work or labor."  *Chicago, etc., R. Co.* v. *Hamerick*
(1912), 50 Ind. App. 425, 434, 96 N. E. 649, and cases
cited.  The trial court did not err in overruling the de-
murrer to the complaint.

With the general verdict the jury returned answers to
265 interrogatories, which describe in detail the construc-
tion and operation of appellant's plant and machinery, and
find the facts leading up to and attending the accident to
appellee's decedent.  The answers show, in substance, that
at the time of his death, said William H. Butz was the
chief engineer and machinist in appellant's plant, and had
occupied that position in the same plant for many years;
that he was in charge of the engines, boilers and other ma-
chinery in the plant and was authorized to make needed
repairs to the same and to purchase materials therefor; that
he had charge of the men in the plant and was authorized
to use them in making repairs; that Carver Woods was gen-

eral manager of appellant's business and of said plant; that he was not a machinist or engineer; that the line shaft in said plant, to which the belt ran from the drivewheel on the engine, was out of line, which fact was known to. both decedent and said Woods for about two months prior to the death of said Butz; that the belt had a tendency to run off the drivewheel on account of said shaft being out of line, and decedent overcame said tendency by adjusting the "idler"; that he had been ordered by said manager sometime before his injury to adjust the line shaft, but did not do so; that in adjusting the idler decedent usually, and upon the occasion of his injury, stepped upon the top of a brick wall located just south of the idler pulley and between said pulley and the flywheel of the engine, and reached down ten inches or more to turn the adjusting screws by using the handles attached thereto; that at the time of the accident the belt leading from the flywheel of the engine to the drivewheel of the line shaft was running; that decedent could have adjusted the idler before starting the engine, and while the belt and idler pulley were stationary; that it was necessary to adjust the idler while the machinery was in motion to obtain the best results; that decedent could not have gone down on the floor of the pit and adjusted the idler by using the handle on the screw while standing in the pit on the west side of the brick wall without coming in contact with the pulley on the belt; that he could have gone into the pit, stood on the brick wall immediately west of the post and collar, and adjusted the idler without coming in contact with the pulley; that it was not practicable and feasible to go down into the pit to a point immediately west of the post and idler and there make the necessary adjustment; that it was more dangerous to step upon the brick wall from the doorway or step and adjust the idler from that position than to go down on the floor of the pit and get upon the wall immediately west of the post and idler; that decedent could have gone down

on the floor of the pit and from there have adjusted the idler in safety, by turning the set screws in the west collar of said idler but the boxing could not readily be moved in that manner; that it was more dangerous to attempt to adjust the idler by the use of the screw above the idler while standing on the brick wall than to attempt to adjust it by means of two set screws in the collar while standing on the floor of the pit west of the wall; that the floor of the dock above the pit was easily accessible from the floor of the engine room by means of a stairway; that the screws of the idler protruded above the floor of the dock about nine inches, were easily accessible, and could be adjusted by using a wrench; that said idler was ordinarily adjusted by using the handles on said screws, and decedent when injured was attempting to adjust the screw on said idler in the usual and ordinary way; that the belt and idler were without guard at the place where decedent was required to go to adjust the idler; that it was practicable to guard said belt and idler, and decedent's injury was caused by failure of appellant properly to guard the belt and idler at the point where he was caught and killed; that the failure to guard said belt and idler was the proximate cause of his death, and he was at the time acting without any fault on his part.

Appellant insists that some of the findings were conclusions and not facts, but as the general verdict includes a finding of facts covering practically the same propositions, the objection does not affect the question presented by the motion for judgment on the answers to the interrogatories. Appellant insists that the interrogatories show (1) that the conditions making necessary the work decedent was doing when killed were caused wholly by his own failure to adjust the line shaft; (2) that decedent was doing the work in a negligent manner, in that he voluntarily chose a dangerous method when safer methods had been provided.

The first objection is answered by the proposition that the question of assumption of risk has no application to a case arising under the statute requiring belts and other machinery to be guarded, and the further proposition that contributory negligence is not necessarily established against an employe by showing that he continued to use defective machinery after he knew it was out of repair. *American Car. etc., Co.* v. *Clark, supra; Davis* v. *Mercer Lumber Co., supra.* In the recent well-considered case of the *Jenney Electric Mfg. Co.* v. *Flannery, supra,* it is said: "Contributory negligence cannot in all cases, be imputed to a servant from the mere fact that he chooses the more dangerous way or method of performing a duty when a safe method, or one less dangerous, was open to his choice.  *  *  *  In many cases, however, the question must be one of fact for the jury." The propositions, reasoning and authorities in the case just cited are applicable to the case at bar to such an extent as to render unnecessary an extended discussion or consideration in this opinion of many of the propositions there considered.

The decedent is shown to have undertaken to adjust the idler by using the handles on the screws specially provided by his employer for that purpose. The answers also show that he could have taken other positions safer than the one he was in when killed, and could have adjusted the idler by set screws not so provided with handles; but that he was attempting to do the work by the means provided and in the usual way. Several possible ways of doing the work are indicated, but some of these are shown to be impractical. He was not required by any order or rule to do the work in any particular manner. The contention that he was guilty of contributory negligence is not based on the proposition that he was attempting to do the work by improper means or in a forbidden or unusual way, but that the place where he was attempting to adjust the idler was more dangerous than other places where he

could have done the same work. Some of the answers are contradictory and nullify each other. The jury, both by the general verdict and by answers to interrogatories, found that decedent acted with due care and was not guilty of any negligence contributing to his death. On the facts of this case the question of decedent's contributory negligence was for the jury and cannot be declared as a matter of law. The answers are not in irreconcilable conflict with the general verdict, and the motion for judgment thereon was properly overruled.

Appellant complains of the giving of certain instructions and of the refusal of the court to give instructions tendered by appellant. The first objection is to the giving of instruction No. 1 on the ground that the court incorporated into the instruction the entire complaint. While the practice of reading the whole complaint to the jury as a part of the instructions is not generally to be commended, it does not afford ground for reversing a judgment. *Blair-Baker Horse Co.* v. *First Nat. Bank* (1905), 164 Ind. 77, 84, 72 N. E. 1027; *Collins* v. *Williams* (1898), 21 Ind. App. 227, 232, 52 N. E. 92. It is also stated that the instruction is erroneous because it did not include a statement of the doctrine of assumption of risk. We have already shown that the doctrine of assumption of risk has no application to this case, because the action is based on the statute requiring certain machinery and belting to be guarded. A general instruction when incomplete, but correct as far as it goes, may be completed by other instructions. *Harness* v. *Steel* (1902), 159 Ind. 286, 293, 64 N. E. 875; *Aspy* v. *Botkins* (1903); 160 Ind. 170, 175, 66 N. E. 462.

By instruction No. 25 tendered by appellant and given by the court, the jury was told that if it found defendant had violated the statute in failing to guard the belting, as alleged, and decedent was injured on account thereof, this alone would not justify a recovery if decedent by his own

negligence proximately contributed to his injury. This and other instructions clearly cured any alleged omission in instruction No. 1.

Where the answers of the jury to interrogatories show that an alleged erroneous instruction was harmless, the judgment will not be reversed on account of such error. *Clear Creek Stone Co.* v. *Dearmin* (1903), 160 Ind. 162, 169, 66 N. E. 609.

Many of the instructions tendered by appellant and refused by the court, in practical effect asked the court to instruct the jury, as a matter of law, that decedent was guilty of negligence contributing to his death, and that the plaintiff could not recover. These instructions were refused, and the court gave others which submitted the question of the care or want of care of the decedent to the jury to be determined from the evidence. The instructions given, when considered as a whole, state the law fully and correctly under the issues, and those tendered which were correct statements of the law applicable to the facts and issues of the case were fully covered by those given.

Appellant also complains of the admission and exclusion of certain testimony. We have examined these questions and do not consider them of sufficient importance to set them out in this opinion, for the alleged error, if any, in this respect was not of a character to in any sense harm appellant. The final contention that the judgment is not sustained by sufficient evidence is fully answered by the discussion of other questions already considered.

Finding no error prejudicial to appellant, the judgment is in all things affirmed.

NOTE.—Reported in 98 N. E. 818. See, also, under (1, 5) 26 Cyc. 1392; (2) 14 Cyc. 1129; (3) 16 Cyc. 852, 856; (4) 26 Cyc. 529; (6) 26 Cyc. 1180; (7) 31 Cyc. 49; (9) 26 Cyc. 1239; (10) 26 Cyc. 1482; (11) 26 Cyc. 1513; 38 Cyc. 1927; (13) 38 Cyc. 1782; (14) 38 Cyc. 1809; (15) 38 Cyc. 1711; (16) 38 Cyc. 1411. As to scientific facts and principles of which courts take judicial notice, see 124 Am. St.

31. As to duties and liabilities of electric companies under the law of master and servant, see 100 Am. St. 537. As to the rule of assumption of risk, as applied to dangerous machinery, see 119 Am. St. 434. As to the distinction to be marked between assumption of risk and contributory negligence, see note to *Brazil Block Coal Co. v. Gibson* (Ind.), 98 Am. St. 314. As to when contributory negligence is a question for the jury, see 8 Am. St. 849. On the question of servant's assumption of risk of master's breach of statutory duty, see 6 L. R. A. (N. S.) 981; 19 L. R. A. (N. S.) 646; 22 L. R. A. (N. S.) 634; 33 L. R. A. (N. S.) 646; 42 L. R. A. (N. S.) 1229. As to whether a servant may assume the risk of dangers created by the master's negligence, see 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215.