UNION TRACTION COMPANY OF INDIANA *v.* BARNETT.

[No. 10,296. Filed May 11, 1920. Rehearing denied November 19, 1920. Transfer denied February 2, 1921.]

1. RAILROADS.—*Interurban.*—*Crossing Accidents.*—*Negligence.*—*Operation of Car at Excessive Speed.*—Where an interurban railway stopped its cars at a highway crossing only on signal, the fact that a car approached the crossing at night, at such a high rate of speed that it could not be stopped before it reached the crossing, after the motorman could see the signals, warrants an inference of negligence which will support a general verdict in favor of a prospective passenger who, in going upon the tracks to signal the car, caught his foot between a rail and a loose plank and was struck by the car.  p. 25.

2. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—*Right Result.*—In an action for personal injuries, a verdict for plaintiff will not be disturbed because of error in instructions given,

where the general verdict finding plaintiff guilty of negligence was warranted by the evidence. p. 25.

3. RAILROADS.—*Interurban.*—*Crossing Accidents.*—*Action.*—*Complaint.*—*Construction.*—In an action against an interurban railway company by a prospective passenger who, in going upon the tracks to signal an approaching car to stop at a local stop, caught his foot between a rail and a loose plank and was struck by the car, one paragraph of the complaint *held* to rely on the negligent rate of speed at which the car was operated and the other paragraph on negligent construction of the crossing, either of which acts of negligence would be sufficient to support the verdict for plaintiff. p. 25.

4. APPEAL.—*Review.*—*Judgment Based on Two Grounds.*—*Error as to One Harmless.*—Where a judgment is based upon two grounds or findings, either of which, independent of the other, is sufficient to support it, it will not be reversed because of error as to one. p. 26.

5. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—Where the result of the trial could not have been different than that arrived at, the giving of erroneous instructions is harmless. p. 26.

From Howard Circuit Court; *William C. Overton,* Judge.

Action by Orah L. Barnett against the Union Traction Company of Indiana. From a judgment for plaintiff the defendant appeals. *Affirmed.*

*J. A. Van Osdol, Conrad Wolf* and *Earl B. Barnes,* for appellant.

*J. C. Herron, Fred J. Byers* and *Bell, Kirkpatrick & Purdum,* for appellee.

NICHOLS, C. J.—The first paragraph of complaint avers in substance that: Appellant owns and operates an interurban line from Kokomo to Indianapolis, over which it operates passenger cars. Two miles south of Kokomo there is a local stop called "Ellis Crossing," near which appellant had a sign which read "Local Stop." The track at said crossing was straight for a distance of 200 feet to the north. On October 19, 1916, at 5:20 p.m., appellee was waiting at such crossing until

a car approached from the north, intending to become
a passenger thereon. It was dark and windy and he
attempted to signal the car by matches and by waving
his hands. Appellant made no effort to stop the car
when within 150 feet of the crossing, and when appellee
started to leave said crossing, he having been standing
in the middle of the track, his right foot was caught
between the west rail and a heavy two-inch plank laid
by appellant about 2½ inches from the rail, which
plank was for the convenience of the public in crossing
appellant's tracks. Appellee could not extricate himself
from the position, and he hallooed and made signaling
gestures, but appellant failed to stop the car, although
appellant's motorman saw appellee in his perilous posi-
tion when the car was more than 100 feet from the
crossing, and in plenty of time to have avoided the in-
jury to appellee, whereby appellee sustained injury.
Appellant was negligent in not stopping its car after it
saw appellee in his perilous position, and in not having
the car under control, and in not being on the lookout
for passengers at its crossing, and in running its cars
at the negligent rate of speed of forty-five miles per
hour. The second paragraph, in addition to the allega-
tions in the first, avers that interurban cars stopped at
Ellis Crossing only on signal, and that in the nighttime
the common signal used was burning matches or paper
at a point on or near the track; that it was necessary
for prospective passengers to stand upon the platform
between the rail and the plank and to make such signals
within view of the motorman. Appellant was negligent
in maintaining the crossing in a negligent and unsafe
condition by maintaining a plank parallel with the track
at a distance of three and one-half or four inches there-
from, with a space between left open and unfilled with
gravel or ballast of any kind, thereby making it danger-
ous to waiting passengers; that it would have been safe

and practicable to have placed a plank so close to the rail that the passenger could not be caught therein, and to fill the space with ballast so that the foot would not descend to a depth which would make it more difficult to extricate; that appellant by use of reasonable care could have seen the signal, and could see, or by the use of reasonable care could have seen, appellee fastened between the plank and rail in time to have stopped the car and to have avoided the collision, but that it negligently and carelessly ran said car at a high and dangerous rate of speed over and across the crossing and against appellee, while he was fastened between the plank and the rail, and with such force that the appellee was thrown several feet to the southward and injured. There was a prayer for damages in the sum of $20,000.

After the cause was at issue by a general denial it was submitted to a jury for trial, which returned a verdict in the sum of $2,500.

Appellant filed its motion for a new trial, which was overruled, and judgment was rendered upon the verdict. The action of the court in overruling the motion for a new trial is the only error assigned.

In answer to interrogatories the jury found that the appellant was, on October 19, 1916, maintaining a crossing over its railroad known as the Ellis Crossing, which was a private crossing, with a roadway across the same leading to a farmhouse on the west side of appellant's track. Appellee was struck at said crossing by a southbound car operated by appellant. He was standing at said crossing between the rails of the track while the interurban car was approaching from the north. His foot was caught between the west crossing plank and the west rail of the railroad track while such car was approaching and before he was struck by such car. The distance between the plank and the west rail of the track at a foot from the north end thereof was two and seven-

eighths inches, and where said plank was farthest from the rail it was five inches. Appellee was wearing low-cut shoes, the sole of which was three and one-half inches wide at its widest point, and the heel two and one-half inches. Appellee knew the car was approaching when it was 500 feet north of the crossing. The car stopped south of the crossing. It was moving before it slowed down at about forty miles per hour. Appellee knew the car was approaching when it was 1,000 feet away. There was a curve to the west, northward from said crossing, and the headlight of the approaching car did not fall upon the crossing before the car was closer than 200 feet thereof. One standing on the front of the approaching car could not observe a person on the crossing, at a time and under the conditions of the accident, before the car had come within 200 feet of the crossing, and appellant's motorman did not observe appellee upon the crossing until the car was within 200 feet thereof. An employe of the appellant knew of the presence of the appellee on the crossing before the car was within 200 feet of the crossing.

There is some evidence to support this finding of the jury. In addition thereto, the motorman testified, in answer to questions propounded to him, that after the headlight turned onto the crossing he saw the signal that appellee was burning, which was a piece of paper. At that time he was about 150 feet from the crossing, and that they (meaning appellee and his uncle) were on the crossing flagging him with the piece of burning paper. The motorman threw off the current and set the brake when right on the crossing or when close to it. The men were flagging for the car to stop, and the motorman did all he could to stop when he saw them flagging. He was running between thirty-five and forty miles an hour when he came to the crossing, and he knew there was a signal up there for cars to stop. The car involved

was a local car.　It was a rainy, bad night, and it was his business to keep on the lookout for things on the track, but he did not see the men until he was right on them.　It did not occur to him that he should have his car under control so as to see them.　He came around the curve that night—a dark, rainy night—at the rate of forty miles an hour because he was making his time. He would have to be pretty close to the crossing to see a lantern, and had the men been there with one he could have stopped after he was about 200 feet away.　The distance from where he was when he saw the appellee to the crossing and until he stopped his car was 400 feet.　He saw appellee waving his hands when he was right on him, but not before, as it was too dark.　He had a good headlight, which was to see by and to notify people that the train was coming.　On a night like that night he could not see persons waiting for a car until he got right on them.　It was the custom to stop at that crossing when there was anybody to get on, but he could not stop this time because he was too close and was going pretty fast.　Going forty miles an hour he would need to commence to slacken his speed about 400 feet north of the crossing in order to stop at the crossing.　If it had been a good night he could have seen the crossing that far.　The motorman thought as to whether there was anyone wanting to get on there that night, but did not bring his car under control until he saw them flagging.　The conductor testified that when one swings a lantern across the track when the car is only 200 feet away the car could not then be stopped in time at the crossing.　If the lantern was seen when the car was 200 feet away, the car would run past the crossing, and the motorman would have to stop the car and back up to get the passenger.

From these facts it appears that, after having established a local stop at Ellis Crossing to which it impliedly

invited passengers to embark at the time of the accident, appellant approached such crossing with one of its local cars at a high rate of speed so that it was impossible for it to stop at such crossing. After it had reached a point north of said crossing where it could see a prospective passenger flagging its car to stop, and at the rate of speed at which it was traveling when flagged on that night, it must run 200 feet past the crossing before it could safely stop.

2. Under such circumstances a general verdict of the jury which finds that appellant was guilty of negligence will not be disturbed, even though erroneous instructions were given. *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312, 322, 73 N. E. 163, 74 N. E. 253; *Indianapolis St. R. Co.* v. *Brown* (1904), 32 Ind. App. 130, 69 N. E. 407; *Muncie Pulp Co.* v. *Koontz* (1904), 33 Ind. App. 532, 70 N. E. 999; *Baum* v. *Palmer* (1905), 165 Ind. 513, 76 N. E. 108; *Roush* v. *Roush* (1900), 154 Ind. 562, 55 N. E. 1017; *City of Muncie* v. *Hey* (1905), 164 Ind. 570, 74 N. E. 250; *St. Clair* v. *Princeton Coal, etc., Co.* (1912), 50 Ind. App. 269, 98 N. E. 197; *Angola R., etc., Co.* v. *Butz* (1913), 52 Ind. App. 420, 98 N. E. 818. Under the facts found, and by the undisputed evidence, negligence must be imputed to appellant in operating its car without having it under control so as to be able to stop at Ellis Crossing for prospective passengers, and we cannot say that such negligence was not the proximate cause of the injury to appellee, as the jury so found by its general verdict.

Appellant contends that both paragraphs of complaint were based upon the theory that the proximate cause of appellee's injury was the fact of his being caught

3. upon the appellant's crossing, and that all acts of negligence were based upon that situation. We do not so read the complaint. While it charges the neg-

ligent construction of the crossing, it also charges the negligent rate of speed with which the appellant approached the crossing. The first paragraph charges that the injury resulted from the speed of the car, and the failure to control it. The second charges that appellee's injuries resulted from each of the acts of negligence of appellant. It is evident that, if appellant had been running its car at such speed as would have made it possible to stop at the crossing on signal, it could easily have avoided the accident. But either of such acts of negligence would be sufficient to support the verdict. In *Minor* v. *Lumpkin* (1895), (Tex. Civ. App.) 29 S. W. 799, it is held that, where it appears that the judgment is based upon two grounds or findings, either of which independent of the other is sufficient to support a judgment, it will not be reversed because the court erred relative to one of such findings. To the same effect see *Putt* v. *Putt* (1897), 149 Ind. 30, 48 N. E. 356, 51 N. E. 337; *Southern R. Co.* v. *Ellis* (1913), 53 Ind. App. 34, 101 N. E. 105; *Terry* v. *Davenport* (1908), 170 Ind. 74, 81, 83 N. E. 636.

With the facts as aforesaid, and the question of contributory negligence of appellee in standing on the track for the purpose of flagging the train not being presented or considered, there could not have been a different result of the trial, even if the instructions given by the court were erroneous. The error in giving them is therefore harmless. The judgment is affirmed.