# St. Clair *v.* Princeton Coal Mining Company.

## [No. 7,577.   Filed April 24, 1912.]

1. APPEAL.—*Harmless Error.—Instructions.*—The giving of an erroneous instruction, or the refusal to give one which is proper and applicable, is not reversible error where it clearly appears from the record that no harm has resulted to the complaining party.  p. 271.

2. APPEAL.—*Harmless Error.—Instructions.—Answers to Interrogatories.*—In an action by plaintiff to recover for the death of her husband while employed in defendant's coal mine, where the answers of the jury to interrogatories showed conclusively that decedent was guilty of negligence proximately contributing to his death, instructions were harmless which could have had no influence on the findings of the jury on the subject of contributory negligence, although the giving of such instructions would have been reversible error in the absence of such findings.  p. 271.

3. APPEAL.—*Briefs.—Instructions.—Waiver.*—Error predicated on the refusal of an instruction is waived where such instruction is not set out in appellant's brief, and no ground of error is pointed out or suggested.  p. 277.

4. APPEAL.— *Review.— Answers to Interrogatories.— Verdict.*—Where the verdict and the answers to the interrogatories were not without some evidence for their support, a cause will not be reversed on the grounds that the verdict is not sustained by sufficient evidence and that it is contrary to law.  p. 277.

5. APPEAL.—*Review.—Presumptions.*—Where it affirmatively appears that any error disclosed by the record was not harmful to

appellant, every presumption will be indulged in favor of the judgment below.   p. 278.

From Gibson Circuit Court, *Herdis Clements,* Judge.

Action by Anna St. Clair against the Princeton Coal Mining Company.   From a judgment for defendant, the plaintiff appeals.  *Affirmed.*

*R. W. Armstrong* and *Thomas Duncan,* for appellant.
*Lucius C. Embree* and *Morton C. Embree,* for appellee.

HOTTEL, J.—This was an action by appellant, as widow of McClellan St. Clair, deceased, for damages resulting to her on account of the death of her husband in appellee's coal mine.

The husband's death is alleged to have been caused by the negligence of appellee in failing to perform a statutory duty requiring it to sprinkle the entries in said mine, thereby permitting the air in the entries and air-passages therein to become filled and charged with fine explosive coal dust, which, it is alleged, was ignited and caused to explode as a result of a windy and fiery shot of a charge of blasting powder fired by decedent and another shot firer in said mine.

The complaint was in two paragraphs.

A demurrer was sustained to the first paragraph and overruled to the second paragraph, with exceptions to each ruling.   An answer in general denial closed the issues.   A trial by jury resulted in a verdict for appellee.   With the general verdict were returned answers to 149 interrogatories.

Appellant's motion for new trial was overruled, and judgment rendered on the verdict.   The ruling on this motion presents the only error assigned or urged by appellant.   Appellee assigns cross-errors, but, in view of the conclusion reached on appellant's assignment, further notice of the cross-assignment will be unnecessary.

Error is predicated on numerous instructions given, and one refused, to which our attention is directed by appellant's brief.

It should be stated in this connection that appellee has set out in its brief the numerous interrogatories answered by the jury and filed with its general verdict, and insists that these answers conclusively show that appellant's deceased husband was guilty of negligence proximately contributing to his death. These answers are important in the considerations of the alleged errors presented, and especially for the purpose of aiding this court in determining whether the ruling of the court in giving or refusing to give any instruction on which error is predicated resulted in harm to appellant.

It is settled by statute, and by the decisions of the Supreme Court and this court, that the giving of an instruction, even though erroneous, or the refusal to give one which is

1. proper and applicable, will not work a reversal of the case where it clearly appears from the record that no harm has resulted to the complaining party. §§407, 700, Burns 1908, §§398, 658 R. S. 1881; *Louisville, etc., R. Co.* v. *Wright* (1888), 115 Ind. 378, 398, 16 N. E. 144, 17 N. E. 584, 7 Am. St. 432; *Hammond, etc., Electric R. Co.* v. *Antonia* (1908), 41 Ind. App. 335, 344, 83 N. E. 766; *Nichols* v. *Central Trust Co.* (1909), 43 Ind. App. 64, 69, 86 N. E. 878; *Tucker* v. *Roach* (1894), 139 Ind. 275, 277, 278, 38 N. E. 822; *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644, 652, 70 N. E. 828; *Gilliland* v. *Jones* (1896), 144 Ind. 662, 666, 43 N. E. 939, 55 Am. St. 210; *Haxton* v. *Mc Claren* (1892), 132 Ind. 235, 247, 31 N. E. 48; *Indianapolis St. R. Co.* v. *Schomberg* (1905), 164 Ind. 111, 114, 72 N. E. 1041.

We have examined these answers with care, and find that they sustain the contention of appellee, in that they show conclusively that appellant's deceased husband was

2. guilty of negligence proximately contributing to his death. These answers, on this branch of the defense alone, would have required the court below, on proper motion, to render judgment thereon for appellee, though the general verdict had been for appellant.

272 APPELLATE COURT OF INDIANA,

. St. Clair *v.* Princeton Coal, etc., Co.—50 Ind. App. 269.

The interrogatories and answers thereto, important on this phase of the case, are as follows:

"(17) Did not said Whitman, on or prior to the 7th day of January, 1908, in his work of mining coal, drill and charge with powder a shot in the solid coal in said mine? A. Yes.

(18) Was not the shot so drilled and charged by said Whitman fired on the evening of the 7th day of January, 1908? A. Yes.

(19) Did not said shot when so fired fail to throw down the coal that was intended to be thrown down by it? A. Yes.

(20) Did not said shot so drilled and charged by said Whitman, when fired on the 7th day of January, 1908, blow out at the opening of the drill hole thereof, and make a crack in said coal extending from said drill hole? A. Yes.

(21) Did not said Whitman re-charge the same shot on the 8th day of January, 1908, that had so blown out and cracked said coal on the evening before? A. Yes.

(22) Did not said McClellan St. Clair and one Solomon Lawrence fire said shot on the evening of said 7th day of January, 1908? A. Yes.

(23) Did not said McClellan St. Clair and said Solomon Lawrence fire said shot again on the evening of the 8th day of January, 1908? A. Yes.

(24) Did not said shot when fired on the 8th day of January, 1908, again fail to throw down the coal that it was intended to throw down? A. Yes.

(25) Did not said shot when re-fired as aforesaid, on the evening of the 8th day of January, 1908, again blow out at the drill hole? A. Yes.

(26) When said shot again blew out at the drill hole, on the evening of the 8th day of January, 1908, did not the fire and gases thereof shoot out into said room, along the entries, air ways and breakthroughs of said mine with great force? A. Yes. * * *

(30) Did not the death of McClellan St. Clair result

from the explosion that was caused by the re-firing of said shot on the evening of the 8th day of January, 1908? A. Yes.

(31)   When they re-fired said shot on the evening of the 8th day of January, 1908, did not said McClellan St. Clair and Solomon Lawrence know that it was the same drill hole as the shot they had fired the evening before? A. Yes.

(32)   Would any dust in the mine have exploded at the time that McClellan St. Clair was killed, if fire and flame from the shot that was placed by Whitman had not come in contact with it after that shot was fired. A. No.  *  *  *

(34)   Was not McClellan St. Clair at the time of his death an experienced coal miner? A. Yes.

(35)   What was the age of McClellan St. Clair at the time of his death? A. 34 years.

(36)   Did said McClellan St. Clair on the day of his death have any defect or weakness in his eyesight? A. No.

(37)   How long had said McClellan St. Clair been engaged in the occupation of coal mining at the time of his death? A. 8 years.

(38)   If there was any reason why said McClellan St. Clair did not know that said shot re-fired by him and Lawrence, on the evening of the 8th day of January, 1908, was in the same drill hole as the shot that was fired by them the evening before, state what the reason was? A. No.

(39)   Was not the shot placed by Harry Whitman in his working place on the 5th south entry on the east side of the mine, the last shot fired by McClellan St. Clair and Solomon Lawrence on the day of their death. A. Yes.  *  *  *

(45)   Was not said shot so placed by Whitman so drilled into the solid coal about twenty inches past the end of the cutting 'loose end' or chance? A. Yes.

(46)   Was not said shot so placed by Whitman on the 8th day of January, 1908, tamped with coal slack? A. Yes.

(47)   Was not the point of the shot so placed by Whit-

man on the 8th day of January, 1908, about seven feet distant from the 'loose end' 'chance' or end of cutting? A. Yes.

(48) Was not the shot so placed by Whitman on the 8th day of January, 1908, drilled into the solid coal more than 7 feet? A. Yes. * * *

(57) Did not the crack in the coal that was caused by the shot that was fired in Whitman's working place, on the 7th day of January, 1908, render it dangerous for St. Clair and Lawrence to fire the shot in the same drill hole on the day of the explosion? A. Yes.

(58) Could not the crack in the coal have been discovered by St. Clair and Lawrence, by ordinarily careful inspection before they fired the shot that caused the explosion? A. Yes. * * *

(66) Did any one other than St. Clair and Lawrence fire any shots in the defendant's said mine, on the evening of January 8, 1908, before the time they were killed? A. No.

(67) Was not the explosion that resulted in the death of St. Clair caused by the fact that in drilling and charging the shot which brought the explosion about, it was done in such manner that the drill hole was more than seven feet deep, that it extended some twelve inches into the solid coal beyond the end of cutting, 'loose end' or 'chance' that at its point the drill hole was more than seven feet from the end of cutting 'loose end' or 'chance' measured at right angles to the direction of the drill hole, that the shot was tamped with coal slack, and that the shot was charged in the same drill hole from which a shot had been fired the day before, whereby a crack was made in the coal extending downward from the drill hole? A. Yes. * * *

(75) If the decedent St. Clair, had made an ordinarily careful inspection of the shot that caused the explosion, before it was fired, could he not have discovered: (A) That the drill hole at its point was more than five feet distant from the end of cutting, 'loose end' or 'chance' measured at right

angles to the direction of the drill hole? A. Yes. (B) That the shot was tamped with coal slack? A. Yes. (C) That there was a crack in the coal extending downward from the drill hole? A. Yes. * * *

(87) Was not the fire and force of the explosion of the blasting powder that exploded in the defendant's mine at the time the said St. Clair was killed, sufficient in itself to have killed him at the place at which he was killed? A. Yes.

(88) Was not McClellan St. Clair on the day of his death employed to fire the shots placed in the defendant's mine by the coal miners working therein? A. Yes.

(89) Was not St. Clair employed by the miners working in the defendant's mine, to fire the shots placed by them in said mine, in the process of their work of mining coal? A. Yes.

(90) Was not St. Clair so employed by the miners at a meeting held by them, at the meeting place of the Miner's Union, in the City of Princeton, Indiana, sometime before his death? A. Yes. * * *

(106) Was not a part of the duty of McClellan St. Clair to make an ordinarily careful inspection and examination of the shot that caused the explosion, before firing it, in order to ascertain whether the same had been drilled and charged and tamped in such manner that it would be safe to fire it? A. Yes.

(107) Would not such an examination have revealed the angle at which the drill hole penetrated the coal? A. Yes.

(108) Would not such an examination have revealed the fact that the drill hole at its point was more than five feet distant from the end of cutting, 'loose end' or 'chance' measured at right angles to the direction of the drill hole? A. Yes.

(109) Would not such an examination have revealed the crack that had been made in the coal by the shot of the day before? A. Yes. * * *

(112) Was not the drill hole in which the shot that

caused the explosion that resulted in the death of St. Clair, drilled into the solid coal at such an angle to the end of cutting, 'loose end' or 'chance' that at its 'heel' it was about three and a half feet and at its point about six feet or more from said end of cutting, 'loose end' or 'chance' measured at right angles to the direction of the drill hole? A. Yes.

(113) Did not the miner, Harry Whitman, charge the shot that caused the explosion in issue with more than six pounds of powder? A. Yes. * * *

(121) While St. Clair and Lawrence were firing shots on the east side of the mine, on the day of the explosion, was any other work going on in the mine that caused any dust to be in the air in the 5th south entry on the east side of the mine? A. No. * * *

(129) Was any of the coal at the places where St. Clair and Lawrence fired shots on the evening of January 8, 1908, under cut by machinery? A. No.

(130) Did the coal mine in which said McClellan St. Clair is alleged to have been killed produce block coal. A. No."

In addition to the facts found by the jury showing negligence of decedent contributing to his death, other facts are found which would raise a serious doubt as to appellant's right to recover, but these we need not consider. The jury having found the facts showing that decedent was guilty of such negligence, it necessarily follows that the verdict of the jury was right, and that the judgment below should be affirmed, unless some one or more of the rulings of the court below, complained of, and relied on as error, in some way influenced the jury to appellant's prejudice in the answer it made to said interrogatories affecting such question.

We have examined all the several instructions given, which could be said to have influenced in any way said answers to interrogatories on said question, and are of the opinion that in no event could they have had any influence on the jury prejudicial to appellant. Two or three of the instructions

on other questions are open to criticism, and in the absence of said answers, the giving of the same, we think, would have constituted reversible error, but they could have had no influence on the findings of the jury on this subject of contributory negligence.

Error is predicated on but one refused instruction, and it is not set out in appellant's brief, and no ground of error on account of such refusal is pointed out or suggested. Error, if any, on account of such refusal, is therefore waived.

3.

The only other grounds of the motion for new trial are that the verdict is not sustained by sufficient evidence, and that it is contrary to law. These grounds are merely mentioned in appellant's brief, and no reasons given or authorities cited in support thereof.

4.

An examination of the evidence convinces us that the verdict and the answers to the interrogatories heretofore given, were not without some evidence for their support, and that appellant is not entitled to a reversal of the judgment on either of said grounds of her motion for new trial.

It should be stated that since this appeal was taken, a case involving a suit for damages for the death of the associate shot firer of appellant's deceased husband, resulting from the same explosion here involved, has been decided by the Supreme Court. *(Princeton Coal, etc., Co.* v. *Lawrence* [1911], 176 Ind. 469, 95 N. E. 423.) In this connection it is due appellant that we should also state that several of the questions presented by this appeal, especially those urged by appellee on its cross-assignment of error, were by that case decided adversely to appellee's contention, and the law applicable to this case, as recognized and expressed in that case, would probably require a reversal of the judgment in this case, but for the effect of the general verdict and answers to the interrogatories in this case. The inconsistency of the judgments in the two cases results from the fact that the verdict in the former case was for the plaintiff, while in this

case it is for the defendant, and also from the difference in the facts found by the answers to the interrogatories, supporting the two verdicts. This court fully recognizes the correctness of the law as applied to the former case, and feels that but for the answers to interrogatories in this case, there should be a reversal. However, the rule of this court

5. and the Supreme Court, which indulges every presumption in favor of the judgment below, and prevents reversal thereof on account of any error which the record discloses could not have harmed appellant, necessitates the affirmance of this judgment.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 197. See, also, under (1) 38 Cyc. 1809, 1816; (2) 38 Cyc. 1815; (3) 2 Cyc. 1014; (4) 3 Cyc. 348; (5) 3 Cyc. 387. As to immaterial errors in appellate proceedings, see 47 Am. Dec. 465.