Talge Mahogany Co. *v.* New Albany Veneering Co.—84 Ind. App. 93.

dence submitted to the jury on the issues involved. It is sufficient for us to hold that there was abundant evidence from which the jury might find that illicit relations existed between appellant and Pearl Mayes, and that it had not been changed by an actual contract of marriage. We see no reason for disturbing the verdict. We have carefully examined the instructions given as well as those tendered and refused, and we hold that the jury was fully instructed as to the law of the case. But even if there was error in instructing the jury, it is so manifest that a correct result was reached that we would not reverse the judgment for error in instructions.

Affirmed.

---

## Talge Mahogany Company *v.* New Albany Veneering Company.

[No. 12,280.   Filed May 20, 1925.   Rehearing denied November 19, 1925.   Transfer denied January 7, 1926.]

1.   PLEADING.—Overruling a motion to separate a complaint into paragraphs is not reversible error although the motion should have been sustained.   p. 97.

2.   EVIDENCE.—*Objection to evidence on ground that it was outside the issues was properly overruled in the specific case.*— Where a complaint alleged facts constituting two separate causes of action, one based on a written contract and the other based on an implied contract, but there was no motion to separate, an objection to the introduction of evidence in support of the cause of action based on the implied contract that it was outside the issues, the complaint being on a written contract, and that the evidence offered was an effort to recover damages "for matter that is entirely beyond the written contract," was properly overruled.   p. 100.

3.   APPEAL.—*Admission of letter in evidence held harmless error, if any, where not prejudicial to appellant.*—Introduction of letter in evidence *held* harmless error, if any, where there was nothing in it prejudicial to appellant, and it was for the benefit of both appellant and appellee.   p. 101.

Talge Mahogany Co. *v*. New Albany Veneering Co.—84 Ind. App. 93.

From Marion Superior Court (31,300); *Harry O. Chamberlin,* Special Judge.

Action by the New Albany Veneering Company against the Talge Mahogany Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.* By the court in banc.

*Doan & Mathews* and *Alvah Rucker,* for appellant.

*James W. Fesler, Harvey J. Elam* and *Howard S. Young,* for appellee.

McMAHAN, J.—This cause was tried on an amended complaint in one paragraph alleging:    That in December, 1917, appellant entered into a contract with the Signal Corps of the United States Army for the manufacture of certain plywood to be used in constructing aeroplanes; that appellant was engaged in manufacturing the thin sheets of wood or veneer used in making plywood, but was not engaged in the business of, or equipped to manufacture plywood and was not prepared to manufacture the plywood called for in said contract; that thereafter appellant and appellee entered into a written contract whereby appellee agreed to manufacture the plywood called for in the contract, appellant agreeing to furnish the veneer for that purpose, such plywood to be three-ply construction, with poplar core and mahogany face and back, appellant to cut the veneer to size and deliver the same to appellee at New Albany, and to pay appellee ten and one-fourths cents a foot for making the plywood, $5.16 per thousand surface feet of all mahogany which had to be jointed and taped and $2.42 per thousand for poplar core which had to be jointed and taped; that the contract of appellant with the signal corp called for pieces of plywood of smaller dimensions than the contract between appellant and appellee, and that the cost of making plywood in sizes named in the contract between

NOVEMBER TERM, 1925.          95

Talge Mahogany Co. *v*. New Albany Veneering Co.—84 Ind. App. 93.

appellant and appellee was much less than the cost of making the same area in sizes named in the said contract with the signal corps, the time required to make the large sizes being substantially less than that required to make the small sizes.

That after the execution of the contract with appellant, appellee proceeded to prepare to execute the same, and installed special equipment for that purpose at a cost of $2,932.88, which cost had been figured into the cost of manufacturing the entire order covered by the contract and to be absorbed in the completion of the contract. That appellee manufactured and delivered to appellant under said contract 404,577 feet of plywood, 340,497 feet of which passed government inspection and was of the sizes required by the contract between appellant and the government, but 64,080 feet was rejected by the government because of defects in the veneer furnished by appellant; that later, said rejected pieces of plywood were, at the request of appellant, cut so as to eliminate the defects and the part of such plywood remaining was made into other sizes called for in the contract between appellant and the signal corps, and the pieces so cut off delivered to appellant; that said rejection was not due to any fault of appellee. That because of the failure of appellant to furnish veneer of proper sizes and of the required quality, appellee was required to cut the veneer into smaller sizes, and had to make and handle 70,863 pieces, whereas under the contract appellee would have made only 30,324 pieces, and that it cost appellee $7,190.74 more to make the 70,863 pieces than it would have cost to have made the 30,324 pieces in the sizes called for in the contract between appellant and appellee.

That if appellant had furnished veneer of the proper size, thickness and quality, appellee would have been required to handle 1,300,000 feet of veneer, but, be-

96    APPELLATE COURT OF INDIANA,

Talge Mahogany Co. v. New Albany Veneering Co.—84 Ind. App. 93.

cause of appellant's failure to furnish proper veneer, appellee was required to handle 2,000,000 feet of veneer, and to tape, patch, rip, dry, sort, inspect and handle the same, at a cost of $980.75, more than what it would have cost if the proper veneer had been furnished. That appellant agreed to furnish veneer of certain sizes and that, in addition to the labor of ripping and taping last above referred to, it was necessary for appellee to joint and tape 75,558 feet of mahogany face stock and 48,838 feet of poplar core at a total cost of $508.07.

That appellant agreed to pay the freight on all veneer shipped and returned but that it failed so to do and that appellee was required to and did pay $825.41 for freight, demurrage, and draying because of such failure; that after using all of the veneer shipped to appellee, it was, by reason of appellant's failure to furnish the proper sizes and quality, required to pack and return a large amount of veneer which could not be used, and that the cost of packing and crating the same was $72.12.

That in April, 1918, when the contract between appellant and appellee had been eighty-eight per cent. executed, the same was, by mutual consent, discontinued and that of the special equipment installed by appellee at a cost of $2,932.88 but eighty-eight per cent. thereof had been absorbed and that, by reason of the discontinuance of the contract, a balance on account of the unabsorbed special equipment, or $351.96, remained and that appellee was damaged in that sum by reason of such discontinuance.

That in the course of the manufacturing of said plywood, appellee, at the request of appellant, purchased certain poplar lumber, and when the contract was discontinued, the parties agreed that appellee should retain such lumber so purchased and not used and that appel-

lant should pay $137.03 for a named amount of lumber so purchased.

That the total amount so charged against appellant on account of said contract is $51,522.04, on which appellant is entitled to a credit of $32,784.53, as per itemized statement filed with the complaint, leaving $18,737.51 due and owing appellee for which it asked judgment.

Appellant filed a motion asking that appellee be required to separate this amended complaint into paragraphs, separating the written contract sued on from the oral contract for the purchase of the poplar lumber. It also filed a motion to make the complaint more specific by pleading the facts on which it predicated the statement that it cost $7,190.74 more to make the small pieces of plywood than it would have cost to have made the larger pieces. These motions being overruled with exceptions, appellant filed an answer of denial, after which there was a trial by jury, which resulted in a verdict and judgment in favor of appellee for $16,000.

Appellants' motion for a new trial being overruled, it appeals.

Appellant's first contention is that the court erred in overruling its motion to separate. By this motion, appellant asked that the complaint be separated

1. into paragraphs; in this, that the written contract sued on be separated from the oral contract for the purchase of the poplar lumber. While this motion should have been sustained, it does not appear that appellant was harmed by the action of the court in overruling it. The claim for the $137, alleged to be due on account of the lumber purchased should have been stated in a separate paragraph of complaint. But appellant made no defense to that item, and fails to make any showing that it was harmed by reason of

the overruling of this motion. And it has been many times held by this court and the Supreme Court that the overruling of a motion to separate is not reversible error. *Huntington Light, etc., Co.* v. *Spell* (1916), 185 Ind. 30, 111 N. E. 311; *Adams* v. *Antles* (1914), 57 Ind. App. 594, 105 N. E. 931; *Terre Haute, etc., Traction Co.* v. *McDermott* (1924), 82 Ind. App. 134, 144 N. E. 620. While some of the early cases in this state held it was error to overrule such a motion when two or more causes of action were improperly joined in a single paragraph of complaint, the only case to which our attention has been called holding such action reversible error is *Hervey* v. *Parry* (1882), 82 Ind. 263. All of the recent cases are to the contrary. See *Wabash, etc., R. Co.* v. *Rooker* (1883), 90 Ind. 581; *Mansfield* v. *Shipp* (1891), 128 Ind. 55, 27 N. E. 427; *File* v. *Springel* (1892), 132 Ind. 312, 31 N. E. 1054; *Richwine* v. *Presbyterian Church* (1893), 135 Ind. 80, 34 N. E. 1014. There was no reversible error in overruling this motion.

The next contention is, that the amount of recovery is too large. Appellee made 404,577 feet of plywood, of which 64,080 feet were rejected by the War Department. Appellant insists it should not be charged for the rejected plywood, because, as it contends, the same was rejected because of defective and faulty workmanship on the part of appellee. Appellee, on the contrary, says the 64,080 feet were rejected, not because of defective or faulty workmanship, but because of defective and faulty veneer which appellant furnished, and which appellant, after being notified that the same was defective, directed appellee to use in the making of such plywood; that the plywood so rejected was afterwards cut so as to eliminate the defects and made into smaller pieces which were accepted. There is ample evidence to support appellee's contention, and that appellant

should pay appellee for 404,577 feet of plywood, which at ten and one-fourth cents a square foot, amounts to $41,469.14.

It was alleged in the complaint that it cost $7,190.74 more to make the 70,863 pieces of plywood than it would have cost to have made the 30,324 pieces, if the proper sizes of veneer had been furnished by appellant. In support of this allegation, appellee, over objection, proved that in order to make the extra pieces, it was required to and did handle 194,789 square feet of veneer. In order to prove the cost occasioned by reason of making and handling these extra pieces of plywood, appellee, over appellant's objection, was allowed to prove its total commercial overhead for the year, which included salaries, freight, drayage, interest, selling, advertising, office expense, etc., and which was not included in and covered by the actual manufacturing charges, such as labor. The proof showed that, during the year, appellee shipped nearly 2,000,000 feet of plywood and that the average cost per 1,000 feet, charged to commercial overhead was $27.03, and that the overhead cost of the extra 194,789 feet of veneer was $5,265.14, and that the total labor cost of manufacturing the nearly 2,000,000 feet of plywood, was $61,146.52, from which the cost of labor of the extra veneer was found to be $1,819.72. The total cost of the extra 194,789 feet of veneer was thus proved to be $7,190.74. The only objection appellant made to the introduction of this evidence was, that it was "a question outside the issues—this being a suit brought on a written contract and on one paragraph of complaint, that paragraph being on a written contract, and this seeks to introduce testimony, to recover damages, for matter that is entirely beyond the written contract." No objection was made to any of this evidence on the ground that it was not the proper manner of proving

the facts inquired about. Appellant insists that the only cause of action was one founded on a written contract and that this evidence was outside of the issues and not the basis for any damages recoverable under the complaint. The complaint, as heretofore stated, charged that appellee, by reason of appellant's failure to furnish veneer of the sizes called for in the contract, was compelled to make more than 40,000 pieces of plywood more than it would have been required to make if appellant had furnished veneer of the proper sizes and that it cost $7,190.74 more to make such plywood than it would have cost if the proper sizes of veneer had been furnished.

Appellee contends that the failure of appellant to furnish the proper sizes of veneer was a breach of the contract, and properly pleaded as such. But it is not necessary for us to determine whether it is pleaded as a breach of the contract, or as a separate and independent cause. There was no motion asking that this charge be stated in a separate paragraph of complaint. The facts charged, being sufficient, if proved, to warrant a recovery, if stated in a separate paragraph of complaint, were before the court and, being within the issues, the court properly overruled appellant's objection to the evidence. What we said about the introduction of the evidence concerning the charge of $7,190.74, applies to each objection made to the introduction of evidence relating to the other charges mentioned in the complaint.

If the proper sizes of veneer had been furnished according to the contract between appellant and appellee, the latter would have been required to make 30,324 pieces of plywood. Appellant, however, failed to furnish veneer of proper sizes, so it became necessary for appellee to make 70,863 pieces of plywood. There is evidence from which the jury could have found that it

cost appellee $980.75 for handling, inspecting, assorting, taping, ripping and redrying the unsuitable veneer furnished by appellant; that the cost for joining and taping the mahogany and poplar veneer at the contract price was $501.87; that because of appellant's failure to pay the freight on the veneer shipped to appellee, the latter was required to and did pay for freight and demurrage $622.07; that it cost appellee $52.44 to crate and pack the veneer returned to appellant and that there was $137.03 due appellee on account of the poplar lumber purchased at the request of appellant. The total of these several items of indebtedness is $50,954.04. Appellant is entitled to a credit of $32,784.53, which leaves a balance of $18,169.51, plus interest for a period of about two years, which the jury might have found was due and owing appellee.

As heretofore stated, some of the plywood was rejected by the government inspector. This was reported to Mr. Talge, president of appellant company.

3. Later, Mr. Talge and an officer of appellee company went to Chicago and took samples of the veneer to the district manager of the Aircraft Production, who stated that certain defects would not be cause for rejection, and appellee was told to go ahead with the work. A day or two later, the district manager wrote a letter to appellee concerning the defects, saying that one of the samples could not be accepted and making suggestions in regard to other samples and the future course to be followed in the work. This letter was shown to Mr. Talge. This letter was introduced in evidence over appellant's objection, and it is claimed this was error. If the introduction of this letter in evidence was error, it was harmless, as there is nothing in it prejudicial to appellant. It was more a letter of advice, than a letter of criticism, and was for the benefit of both appellant and appellee.

Appellant also complains of the conduct of one of the jurors in the course of the trial, but there is no merit in this complaint. There was no error in overruling the motion for a new trial.

Judgment affirmed.