PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* RUSHTON.

[No. 12,301. Filed June 9, 1925. Rehearing denied November 6, 1925. Transfer denied November 13, 1929.]

228

*McNutt, Wallace, Harris & Randel,* for appellant.
*Hume & Gaston* and *S. C. Kivett,* for appellee.

McMahan, J.—Complaint by appellee, in one paragraph, to recover damages for personal injuries alleged to have been caused by the negligence of appellant in the operation of a train across a street in the town of Amo, in Hendricks county.

The allegations of the compliant, so far as is necessary to an understanding of the questions presented, are, in substance, as follows: Appellant's line of railroad through said town consists of a main track, and a switch parallel to, and about eight feet north of, the main track; the principal part of said town lies north of the railroad which crosses the street at right angles; for a number of years a row of buildings consisting of a large warehouse, a mill, elevator and other buildings in connection therewith, have been maintained immediately east of said street and north of the switch, and in such manner as to completely prevent travelers upon the street, when approaching the railroad crossing from the north, from seeing or hearing a train upon said tracks east of said street until such traveler has passed to the south of said buildings and upon said crossing; said street was, at all times, both day and night, a much-used thoroughfare, and was used generally by the public in all kinds of vehicles; on December 17, 1920, and for a long time prior thereto, defendant ran a number of trains over

said crossing, and maintained a schedule for the operation of its trains, and daily operated a number of trains over said crossing at a speed of from 40 to 60 miles an hour; that defendant, with knowledge of said facts, *"negligently failed to provide suitable and proper means of warning travelers using said main street of the approach of trains from the east"*; sometime prior to December 17, 1920, defendant had installed near said crossing what is commonly known as an electric gong; that, with full knowledge of the obstructed condition of the approach to said tracks, defendant placed a box car upon said switch and east of said crossing in such manner as to further obstruct said view, and to render it impossible for a traveler upon said street approaching said crossing from the north to have any view of an approaching train, or otherwise discover the same, until after crossing said switch and being upon the main track of the railroad and in a place of great danger; on the night of December 17, 1920, at the time of the injury to plaintiff, defendant left said car upon the switch in the condition aforesaid; that, on said night, defendant operated a through passenger train from the east over said crossing at a high and dangerous rate of speed, and *"did, on said occasion, with full knowledge of all the facts, negligently and carelessly operate said engine and train of cars upon and over said crossing at a high and dangerous rate of speed"* of more than 40 miles per hour, *"and did negligently and carelessly fail to give proper, timely and sufficient warnings of the approach of said train upon said crossing,"* and in such manner as to warn people using said street of the approach of its train, and did negligently and carelessly fail to sound the whistle and ring the bell, *"and did negligently and carelessly fail to sound the whistle and ring the bell at a time and place and in a manner sufficient, in view of the speed of the train and the obstructions to sight and sound, to give reasonable and timely warning"* to

people who were rightfully using said street and crossing, and, as a direct and proximate result of the acts of negligence alleged, struck an automobile in which plaintiff was riding, and did, by said alleged negligence, strike and hurl said automobile and the plaintiff from said track and permanently injure him, both physically and mentally. Then follows a specific description of plaintiff's injuries which it is alleged were the proximate result of the negligence of defendant as hereinbefore set forth. The complaint further alleged that, at the time appellee was so struck and injured, he was in exercise of due care, rightfully using said highway crossing, and traveling from the north to south upon said street in an automobile, as the invited guest of one Tudor, who was driving said automobile, and who had the sole control and management thereof.

Appellant filed a motion to require appellee to set out in separate paragraphs of complaint the several causes of action "attempted" to be stated in the several parts of the complaint hereinbefore quoted. This motion being overruled, it then filed a motion asking that the complaint be made more specific in the following particulars: (1) By stating where the buildings mentioned were situated with reference to the railroad tracks, and the distance of each from the street and from the main railroad track; (2) that the complaint state what particular "obstructed condition" appellant had knowledge of; (3) that it state where the box car was on the switch, and how far east of the street; (4) that it state in what manner and what parts of appellee's head, body, back, etc., were injured; (5) that it state the facts upon which the following conclusions were based: (a) That it was the duty of appellant to provide means of warning travelers on the street of the approach of trains; (b) that it was impossible for a traveler on said street approaching the crossing from the north to have a view

of an approaching train or to discover it until he crossed the switch; (c) that appellant negligently operated its train of cars over the crossing; (d) that appellant negligently failed and neglected to sound whistle and ring bell; (e) that appellant negligently failed to sound whistle and ring bell at a time and place and in a manner sufficient to give reasonable warning; (f) that appellant negligently operated its engine and train over the crossing; and (g) that appellant struck the automobile as a proximate result of the acts of negligence charged.

It is the settled rule in this state that the overruling of a motion to separate is not reversible error. *Talge Mahogany Co.* v. *New Albany Veneering Co.* (1925), 84 Ind. App. 93, 147 N. E. 781, and authorities there cited; and in view of the recent decision of the Supreme Court construing §343a Burns 1921, the appellant cannot under the condition of the record in this case predicate error upon the action of the court in overruling its motion to make more specific. See *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740. There was no reversible error in overruling either of said motions.

Appellant filed a demurrer for want of facts, with memorandum stating a number of reasons why the complaint was not sufficient. But, in that part of the brief devoted to the statement of the propositions, points and authorities, wherein appellant undertakes to state the specific reasons why the complaint is not sufficient and why it was error to overrule the demurrer thereto, after setting out the substance of the complaint, appellant states one, and only one, proposition why the overruling of the demurrer was error, said proposition being in the following language: "We assert that each of these allegations is a mere conclusion of the pleader; that at least some of them are necessary to the sufficiency of the pleading; that the facts upon which the conclu-

sions are attempted to be based are not sufficient to support the conclusion; that a motion having been made to require the facts to be stated and overruled, the complaint stands on the same footing that it would have stood before the act in regard to pleading conclusions was passed, that is, a conclusion either of law or fact in a complaint adds no virtue to it; and that the demurrer, therefore, should have been sustained." In support of this proposition, appellant sets out and states certain points or reasons, the first of which is, that there is no statement in the complaint showing where the buildings were, other than that they were north and immediately east of the street, and that the allegation that they were maintained in such manner as to completely prevent travelers on the street, when approaching the crossing from the north, from seeing or hearing a train until such traveler had passed to the south of said buildings and upon said crossing, is a mere conclusion, and that no fact could be truthfully pleaded to sustain such conclusion. In this contention, appellant refers to the evidence, which it says shows that the mill was 19 feet and six inches north of the track; that no part of any building was less than 17 feet and eight inches from the main track; and that that particular building was 156.7 feet east of the street.

Since appellant has referred to the evidence, and since the matter comes to us after trial so that we may look to the evidence, not to determine whether there was any error in overruling the demurrer, but for the purpose of determining whether that ruling, even if erroneous, rises to the dignity of reversible error, we will, at this point, review the evidence.

The following plat shows the location of the crossing in question, the location of the traction railroad and the several buildings referred to in the complaint.

Numbers 7, 8, 9 and 10 on the plat are business houses; 12 is the traction station, with a cement walk on the south, and with a roof extending seven feet south of the depot building; 14 feet south of the cement walk is the traction railroad; 58 feet south of the traction railroad is the switch, which is eight feet four inches north of the north rail of the main track of appellant's railroad; 1, is the feed house; 2, salt house; 3, mill and elevator; 4, engine house; 5, coal house; and 6, appellant's depot. The feed house is 36 feet east of the center of the street, and six and one-half feet north of the switch; it is 50 feet long and 28 feet wide. The plat is drawn to scale so that the comparative sizes and locations of the other buildings can be seen from an examination of the plat. Just before the accident, appellee and the owner and driver of the automobile left a restaurant in the building marked 10 on the plat. After leaving the restaurant to a point 10 feet north of the traction line, there was no view of appellant's tracks to the east. From that point to a point three or four feet south of traction line, there was a view of the railroad track east of a point which is 1,500 feet east of the crossing. At the time of the accident, a coal car, with sides nearly as high as a box car, was standing on the switch about 50 feet east of the crossing at the point marked "Car" on the plat, so that a traveler on the street had no view of the track east of the crossing from the time he passed a point three or four feet south of the traction line until he crossed the switch far enough so that his view would not be obstructed by the car on the switch.

It may be conceded that the allegation that the train was operated at a speed of 40 to 60 miles an hour is not alone sufficient to charge negligence. It may also be conceded that the facts concerning the location of the several buildings, the car on the switch, and other

conditions at this crossing, are, when considered by themselves, not sufficient on which to found a charge of negligence. But the allegations concerning the speed of the train, the failure to ring the bell and sound the whistle, when considered in connection with the conditions at this crossing and the obstructed view, present a different question. This is especially true when there has been a trial, and the record on appeal shows that appellant and appellee, each without any objection from the other, introduced evidence covering all of the alleged defects and omissions in the complaint. The evidence in the instant case clearly shows the location of all the buildings and the conditions at the crossing. It shows the speed of the train and the facts concerning the signals given of the approach of the train.

In determining whether a pleading is sufficient to withstand a demurrer, we must look solely to the allegations of the pleading. We cannot look to the evidence for that purpose. But when a cause has been appealed to this court after trial, and where the evidence is in the record, we are required to do more than decide that the action of the court in overruling a demurrer was error. We must then determine whether, in view of the whole record, the ruling, though erroneous, was prejudicial to the adverse party. In deciding this question, we may look to the evidence, and to other parts of the record, and, if it affirmatively appears from the whole record that the erroneous ruling did not prejudice the adverse party, and that the case was fairly tried and determined on its merits, it is our duty to affirm regardless of such error. *Vulcan Iron, etc., Co.* v. *Electro, etc., Min. Co.* (1912), 54 Ind. App. 28, 99 N. E. 429, 100 N. E. 307. Conceding that the complaint failed to state a cause of action based on the failure to give the statutory signals, and that it was defective in not showing the location of the several buildings, and

that the allegation that they were located so as to obstruct the view of a traveler on the street and prevent him from seeing or hearing the approach of the train was a conclusion, and that it was error to overrule the demurrer to the complaint, it clearly appears that the cause was fairly tried and determined on the merits. There is no pretense that appellant was harmed by the overruling of the demurrer.

Appellant, in support of the contention that the several rulings of the court on the motion to separate, and on the demurrer to the complaint, were prejudicial to its rights, says that the court, in instructing the jury, submitted the case upon three different theories, viz.: (1) Negligent speed; (2) failure to give statutory signals; and (3) failure to give other than statutory signals. This contention does not impress us as being meritorious. Appellant called a number of witnesses who testified on the subject of the statutory signals being given. Thirteen said they heard the whistle. Three of the 13, the engineer, the fireman and another employee, said it gave two short and two long blasts. One or two said it gave three blasts. Two of them said they heard it, without attempting to state where the train was at the time or the number of blasts heard. The engineer and the fireman said the bell on the engine was ringing from the time the train left Summit, which is about three miles east of Amo, until after it passed over the crossing. Fifteen witnesses testified they did not hear the bell. One said he heard it after the accident. Twenty-five witnesses testified concerning the giving and failure to give the statutory signals. In instruction 4, tendered by appellant, it asked the court to instruct that, in order for appellee to recover, he must establish, by a preponderance of the evidence, one or more of the material acts of negligence charged in the complaint, and that if

appellee failed to so prove the alleged failure to give the statutory signals, that would be a complete defense to the action. In instruction 11, given at the request of appellant, the jury was told that the law required "certain warning signals" to be given, and in instructions 12, 35 and 38, tendered by appellant and given, the jury was told that the failure to give the statutory signals did not relieve appellee from the duty of exercising reasonable care for his own safety. Instruction 34, tendered by appellant and refused, was to the same effect. It is clear, from the evidence and from the instructions tendered by appellant, that it then believed the question as to whether it gave the statutory signals was in issue. The complaint, without question, was sufficient to inform appellant that it was charged with operating and running the train through the town and over this crossing in a negligent manner, that is, without giving sufficient warning, in view of the speed of the train and the surroundings.

The contention that the complaint fails to show any duty owing by appellant to appellee is wholly without merit. The facts alleged in the complaint show appellee was a traveler on the highway, and that, while he was attempting to cross appellant's tracks where the same cross the highway, he was injured. Appellant under such facts owed him the duty of reasonable care not to injure him. *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 88 N. E. 1073, 89 N. E. 485; *Chicago, etc., R. Co.* v. *Cunningham, Admr.* (1903), 33 Ind. App. 145, 69 N. E. 304. Appellee, while using the crossing, was not a trespasser or licensee, but was doing that which he had a lawful right to do. As was said in *Hill* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 130, 137, 122 N. E. 321: "This being true, appellee was bound to use ordinary care for his protection."

We are of the opinion, not only that the complaint is

sufficient as against the demurrer, but that, even though it was not technically good, the cause was fairly tried and determined on the merits, so that the overruling of the demurrer, if erroneous, would not constitute reversible error.

Nor was there any error in overruling appellant's motion asking that appellee be required to elect upon what theory the case would be tried.

Complaint is made of instruction 2, given by the court on its motion. By this instruction, the court defined common-law negligence, as follows: "Negligence is the failure to do what a reasonable and prudent person would, or doing what such a person under the existing circumstances would not have done. In other words, negligence is the failure to exercise ordinary care." Appellant insists that the giving of this instruction was error, because it omits the element of duty. In this connection, appellant says that, unless there is a duty to exercise reasonable care towards another, there can be no negligence. It is true that negligence cannot exist in the absence of a duty to exercise reasonable care. *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737, 32 A. L. R. 1171; *Louisville, etc., Traction Co.* v. *Jennings* (1919), 73 Ind. App. 69, 123 N. E. 835. But there is no contention that appellent was not, under the undisputed evidence, under the duty of using reasonable care not to injure appellee or any other traveler on the highway who might be using the crossing. Indeed, the evidence conclusively shows appellant was under the duty to use ordinary care not to injure appellee at this crossing.

In this connection, it is to be noticed that the court did not in any of the instructions inform the jury what acts of negligence were charged in the complaint. The court did, in instruction 1, given on

its own motion, state the substance of the complaint, omitting therefrom the expression that any of the acts had been "negligently" done or omitted. The court, did, however, in an instruction given at the request of appellee, tell the jury that it was alleged that appellant, on the occasion in question, did negligently and carelessly fail to sound the whistle and ring the bell at a time and place and in a manner sufficient, in view of the speed of the train and the obstructions to sight and sound, to give timely warning to persons rightfully using the crossing. He also instructed the jury that the law required certain signals to be given of the approach of a train to a crossing, by sounding the whistle and ringing the bell, and that the failure to give such signals was negligence *per se*. There was no error in giving said instruction 2.

Nor was there error in the action of the court in instructing the jury concerning the requirements of the statute as to the sounding of the whistle and the ringing of the bell, and that a failure to comply with the statute was negligence. Neither was there any error in giving an instruction to the effect that, if the circumstances and the surroundings were such that ordinary care required the giving of other signals in addition to those required by the statute, the failure to exercise such care would be negligence. In other words, that appellant could not relieve itself from the charge of negligence by giving the statutory signals, if, considering all the facts, it failed to exercise ordinary care. There was no error in giving instruction 3, tendered by appellee, wherein the jury was told that, under certain circumstances, reasonable care might require the giving of other than the statutory signals. It is well settled that it may be negligence to operate a train over a crossing at a high speed, when, under the

circumstances the view is obstructed, even though the statutory signals are given. The conditions surrounding a crossing and the speed of the train may require the sounding of the whistle when the engine is less than 80 rods from the crossing. Indeed, the circumstances, taken in connection with the speed, might be such that reasonable care in the operation of the train would require that the whistle on the engine be sounded several times after the engine passes the point 80 rods from the crossing and before it reaches the crossing. *Terre Haute, etc., Traction Co.* v. *Phillips, supra; Wabash R. Co.* v. *McNown, Admr.* (1912), 53 Ind. App. 116, 123, 99 N. E. 126, 100 N. E. 383, and authorities cited; *Pittsburgh, etc., R. Co.* v. *Nichols, Admr.* (1921), 78 Ind. App. 361, 130 N. E. 546.

Appellant tendered 77 instructions with the request that they be given. The court gave 20 of them and refused to give the balance. Complaint is made of the refusal to give eight of these instructions. In view of the instructions given, there was no error in refusing to give the instructions of which complaint is made.

There is no contention that the verdict is not sustained by the evidence, or that the damages assessed are excessive.

There was no error in overruling the motion for a new trial.

Judgment affirmed.

### ON PETITION FOR REHEARING.

McMAHAN, J.—Appellant, in support of its petition for a rehearing, criticises our statement that the traction railroad is 14 feet south of the cement walk running along the south side of the traction station, when one of its witnesses said the distance was 15.3 feet, and

also the statement that, at the time of the accident, a coal car was standing on the switch a short distance east of the crossing. Two witnesses testified there was a box car standing at this point. Two of appellant's witnesses testified that no box car was on this switch the day of the accident nor for several days prior thereto. There is evidence, however, that there was a car just east of the crossing at the time of the accident. The question as to whether it was a box car or a coal car is of no importance except as it related to the situation at the crossing, as bearing on the question of appellant's duty to give warning of the approach of the train, and except as showing that the view of a traveler on the highway was obstructed thereby.

The main contention of appellant in support of its petition for a rehearing relates to our statement that: "When a cause has been appealed to this court after trial, and where the evidence is in the record, we are required to do more than decide that the action of the court in overruling a demurrer was error. We must then determine whether, in view of the whole record, the ruling, if erroneous, was prejudicial to the adverse party. In deciding this question, we may look to the evidence and to other parts of the record, and, if it affirmatively appears from the whole record that the erroneous ruling did not prejudice the adverse party, and that the case was fairly tried and determined on its merits, it is our duty to affirm, regardless of such error."

Appellant insists: (1) That this statement is radically wrong, and that it is "grounded upon the false premise that this court has the right, and that it is our duty, under the statute, to examine and weigh the evidence to determine whether error in overruling a demurrer to a bad complaint is harmless to appellant, and if so to adjudge the error not a reversible one"; and (2) that

this court "cannot examine the evidence to determine whether or not the ruling on the demurrer was harmless or harmful." In support of these contentions, appellant refers to that part of §350 Burns 1914, which provides that "The judgment upon overruling a demurrer shall be that the party shall plead over; and the answer or reply shall not be deemed to overrule the objection taken by demurrer," and says this includes the evidence given under the answer or reply.

It must be kept in mind that we are now dealing with a case where there was no failure to introduce evidence to prove every fact essential to sustain a verdict for appellee. We called attention in the principal opinion, and we again call attention, to the fact that appellant and appellee, each without any objection from the other, introduced evidence covering all of the alleged defects and omissions in the complaint. We do this for the reason that appellant, quoting from *Noble* v. *Davidson* (1911), 177 Ind. 19, 96 N. E. 325, places emphasis upon the fact that the court, in applying §700 Burns 1914, and in referring to the alleged defect in the complaint, which was that there was no allegation in the complaint that Noble was president of a certain company when the contract in question was executed, said: "It was proved at the trial, without any objection by defendants, that Noble was the president of the corporation when the contract was executed, and, indeed, that he executed the contract for the corporation." Appellant, in making this quotation has italicised the words "without any objection" so as to make it appear that the court had also italicised those words and placed emphasis upon the fact that the evidence was introduced without objection. It was not necessary for the court in that case, nor is it necessary for us in this case, to decide what would have been the effect if this evidence had been introduced over an objection. In so far as the instant case

is concerned, the record on this question is the same as was the record in the Noble case. The evidence covering the alleged defect was introduced *without any objection* from appellant. There, as here, the complaint had been tested by demurrer, and what the court said, was said in discussing the effect of overruling a demurrer to a complaint after a trial and on appeal where the evidence was in the record.

There are three sections of the Code bearing upon this question. Section 350 Burns 1914 (§348 R. S. 1881), provides that: "The judgment upon overruling a demurrer shall be that the party shall plead over; and the answer or reply shall not be deemed to overrule the objection taken by demurrer. But no objection taken by demurrer and overruled shall be sufficient to reverse the judgment, if it appear from the *whole record* that the merits of the cause have been fairly determined." (Our italics.)

Section 407 Burns 1914 (§398 R. S. 1881), is as follows: "The court must, in every stage of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment can be reversed or affected by reason of such error or defect."

Section 700 Burns 1914 (§658 R. S. 1881), provides that: "No judgment shall be stayed or reversed, in whole or in part, by the Supreme Court, for any defect in form, variance, or imperfection contained in the record, pleadings, process, entries, returns, or other proceedings therein, which, by law, might be amended by the court below, but such defects shall be deemed to be amended in the Supreme Court; nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."

As was said in *Vulcan Iron, etc., Co.* v. *Electro, etc., Min. Co.* (1912), 54 Ind. App. 28, 99 N. E. 429, 100 N. E. 307: "When a pleading is held sufficient by the court as against a demurrer, the party demurring may stand upon his demurrer and appeal, or he may plead to the merits. If he takes the former course, the only question presented on appeal is the sufficiency of the pleading to which the demurrer was directed, and, in case such pleading is held insufficient on appeal, the judgment will be reversed. If he takes the second course, pleads to the merits and proceeds to final judgment, the objection taken by demurrer may or may not be available to reverse on appeal. If the record does not show affirmatively that such ruling was harmless to the adverse party, the case should be reversed; but, if the *whole record* shows that the case has been fairly determined on its merits, and that the erroneous ruling on demurrer was not prejudicial, the statutes quoted require that the judgment should be affirmed, regardless of such error." (Our italics.) In that case, the trial court erred in overruling a demurrer to the complaint and also in giving instructions, but, on appeal, this court, after having examined the evidence and the answers of the jury to interrogatories, held the errors were not prejudicial and affirmed the judgment.

While a number of decisions may be found holding that an error of the trial court in overruling a demurrer to a defective complaint cannot be cured by subsequent proceedings (*Pennsylvania Co.* v. *Poor* [1885], 103 Ind. 553, 3 N. E. 253; *Pennsylvania Co.* v. *Marion* [1885], 104 Ind. 239, 3 N. E. 874; *Belt R., etc., Co.* v. *Mann* [1886], 107 Ind. 89, 7 N. E. 893; *Ryan* v. *Hurley* [1889], 119 Ind. 115, 21 N. E. 463; *Chapman* v. *Jones* [1897], 149 Ind. 434, 47 N. E. 1065, 49 N. E. 347; *Friedersdorf* v. *Lacy* [1910], 173 Ind. 429, 90 N. E. 766), our courts have departed from the rule announced in these cases.

See *Noble* v. *Davidson, supra; Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 98 N. E. 177; *Prudential Ins. Co.* v. *Ritchey* (1918), 188 Ind. 157, 119 N. E. 369, 484; *Jackson, Rec.,* v. *Atwood, Admx.* (1923), 194 Ind. 56, 140 N. E. 549. The rule, stated in the more recent decisions of the Supreme Court, has been followed by this court in *Vulcan Iron, etc., Co.* v. *Electro, etc., Min. Co., supra; Euler* v. *Euler* (1913), 55 Ind. App. 547, 557, 558, 102 N. E. 856; *Chicago, etc., R. Co.* v. *Gorman* (1914), 58 Ind. App. 381, 106 N. E. 897; *Federal Life Ins. Co.* v. *Barnett, Admx.* (1919), 71 Ind. App. 613, 125 N. E. 522; *Kec* v. *Kec* (1923), 79 Ind. App. 186, 137 N. E. 632; *Finch, Admr.,* v. *McClellan* (1921), 77 Ind. App. 533, 130 N. E. 13, 131 N. E. 236.

And where the record shows that a cause was fairly tried and determined, errors in giving or refusing to give instructions are harmless. *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577, L. R. A. 1917E 242; *Indianapolis St. R. Co.* v. *Schomberg* (1905), 164 Ind. 111, 72 N. E. 1041; *Norris* v. *Casel* (1883), 90 Ind. 143; *Toler* v. *Keiher* (1882), 81 Ind. 383; *Moriarity, Rec.,* v. *Hickman* (1920), 73 Ind. App. 329, 127 N. E. 459; *Mishler* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 189, 122 N. E. 657; *Walda* v. *Fort Wayne, etc., Traction Co.* (1913), 54 Ind. App. 401, 102 N. E. 978; *St. Clair* v. *Princeton Coal, etc., Co.* (1912), 50 Ind. App. 269, 98 N. E. 197; *Burton* v. *Burton* (1922), 77 Ind. App. 436, 133 N. E. 612. Many other cases decided by this and the Supreme Court might be cited to support the rule.

Appellant insists that a bill of exceptions containing the evidence is not a part of the *"record proper,"* and that we cannot look to the evidence in the bill of exceptions to determine that the overruling of the demurrer was harmless. We cannot agree with this contention. We think it clear that, when the evi-

dence has been brought into the record by a bill of exceptions, it becomes a part of the record on appeal, and that, in a case like the instant one, we have the right to look to the evidence to ascertain whether the merits of the cause have been fairly determined. If the evidence is not in the record, the fact that the party appealing has filed an answer or a reply, shall not, as stated in §350, *supra*, "be deemed to overrule the objections taken by demurrer." But, if it appears from the whole record, which includes the bill of exceptions containing the evidence, that the merits of the cause have been fairly determined, the objection taken by demurrer, and overruled, is not sufficient ground for a reversal. Any other holding would be a reproach on the law and equivalent to saying that even though the record shows a cause was fairly tried and a correct result reached, the judgment must be reversed because of the action of the court in overruling a demurrer or in giving an instruction, when the record conclusively shows such error was harmless. We cannot give our sanction to any such holding. It was held as early as *Amick* v. *O'Hara* (1842), 6 Blackf. (Ind.) 258, that the court could look to the evidence, when in the record, to determine whether the giving of an erroneous instruction was reversible error. We are satisfied that the more recent decisions of the Supreme Court on this subject are right in principle and should be followed.

Rehearing denied.